**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**ALLIANCE ENTERPRISE CORPORATION,** )
)
                           **Plaintiff,** )
)
**v.** )        **Civil Action No. 3:07cv427**
)
**ROBERT J. MANES,** *et al.*, )
)
                        **Defendants.** )

## ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND CROSS-CLAIM

Comes now Defendant Richard L. Hood ("Mr. Hood") (erroneously identified as Richard C. Hood in the Complaint filed herein), by counsel, pursuant to Rule 12 of the *Federal Rules of Civil Procedure*, and for his Answer and affirmative defenses (to which a written reply is expressly requested) to the Complaint of Plaintiff, Alliance Enterprise Corporation ("Alliance"), states that he:

1.      Does not have sufficient information to either admit or deny the allegations in paragraph 1 of the Complaint as to Alliance, and therefore denies the allegations, and demands strict proof of these and all other allegations denied or not expressly admitted herein.  Mr. Hood notes that according to the Delaware Division of Corporations, Alliance Enterprise<u>s</u> Corporation [emphasis added] is a Delaware corporation.

2.      Does not have sufficient information to either admit or deny the allegations in paragraph 2 of the Complaint as to Co-Defendant Robert J. Manes ("Mr. Manes"), and therefore denies the allegations.

3.      Denies the allegations in paragraph 3 of the Complaint as to Richard C. Hood, but again notes that he is Richard <u>L</u>. Hood [emphasis added], and as such admits the allegations in paragraph 3 of the Complaint as to his residency and citizenship.

4.      Admits the allegations in paragraph 4 of the Complaint that this Court has diversity jurisdiction.

5.      Admits the allegations in paragraph 5 of the Complaint that this Court has personal jurisdiction.

6.      Admits the allegations in paragraph 6 of the Complaint that venue is appropriate in this District and Division.

7.      Denies, upon information and belief, the allegations in paragraph 7 of the Complaint that Alliance and MoonCell, Inc. ("MoonCell") entered into a Loan and Security Agreement (the "Loan Agreement"), and that a true and complete copy of the Loan Agreement is attached to the Complaint.  Specifically, upon information and belief, and as set forth more fully in the below Counterclaim, Mr. Hood affirmatively avers that any agreement was to be entered into between MoonCell and an entity known as "Pacesetter" [1], and not between MoonCell and *Alliance*.[2]

8.      Denies, upon information and belief, the allegations in paragraph 8 of the Complaint that Alliance agreed to loan monies to MoonCell, and that MoonCell granted a security interest to Alliance.  Upon information and belief, Pacesetter was to provide funds to MoonCell, for investment purposes.

---

[1] Upon information and belief, Pacesetter may be Pacesetter Growth Fund, L.P., a Delaware limited partnership, Pacesetter Management Group, L.L.C., and/or Pacesetter Capital Group.  *See* subsequent text herein for the basis of this information and belief.   Counsel for Mr. Hood note that Plaintiff's counsel certified in its Financial Interest Disclosure Statement filed in this case that Alliance and "Pacesetter/MESBIC Ventures Holding Company" are affiliated.
[2] Mr. Hood had not even *heard* of Alliance until he was presented with the Hood Signature Page, as defined in the subsequent text herein.

9.      Does not have sufficient information to either admit or deny the allegations in paragraph 9 of the Complaint as to the $500,000.00 Secured Promissory Note (the "Note") ostensibly executed by Mr. Manes, and therefore denies the allegations.

10.     Does not have sufficient information to either admit or deny the allegations in paragraph 10 of the Complaint as to the Amendment to Secured Promissory Note (the "Amendment") between MoonCell and Alliance ostensibly increasing the "Loan Indebtedness" to $750,000.00, and therefore denies the allegations.

11.     Denies the allegations in paragraph 11 of the Complaint that Mr. Hood and Mr. Manes signed a Guaranty in which each of them unconditionally guaranteed payment of the entirety of the Loan Indebtedness, and that a true and complete copy of the Guaranty is attached to the Complaint as "Exhibit D".  Mr. Hood notes that the purported Guaranty consists of seven (7) individually numbered pages (as "GUARANTY—Page 1" through "GUARANTY—Page 7", respectively), bearing the page numbers on the lower left corner of each page.  Those seven pages are followed by an unnumbered (and with no footer or other reference whatsoever to a guaranty) signature page executed, under the subheading "QUANTUM COMMUNICATIONS, INC.", by Robert J. Manes and Richard L. Hood, and under the subheading "ALLIANCE ENTERPRISE CORPORATION", by Rick Moreno, all under the heading of "GUARANTORS".  As set forth above, and in the Counterclaim below, Mr. Hood denies that he entered into any agreement with Alliance, as a guarantor or otherwise, or that the unnumbered, stand-alone, signature page was or is in fact a part of the purported Guaranty.  In addition, the terms of the purported Guaranty in no way constitute an

"unconditional" guarantee of payment of the "entirety" of the Loan Indebtedness.

Rather, the purported Guaranty itself, in section 1, states that the "Guaranteed

Indebtedness"

> shall be limited to an aggregate amount equal to the
> greatest amount that would not render the Guarantors'
> indebtedness, liabilities or obligations hereunder subject to
> avoidance under Section 544, 548, or 550 of the United
> States Bankruptcy Code or subject to being set aside or
> annulled under any applicable state law relating to fraud on
> creditors…

12.     Given that Mr. Hood did not enter into any agreement with Alliance,

denies the allegations in paragraph 12 of the Complaint that the Guaranty provides that

Mr. Hood shall promptly pay Alliance, and all other allegations therein.  As to the

language set forth in the purported Guaranty, Mr. Hood states that the document

otherwise speaks for itself, and that no further response is required.

13.     Does not have sufficient information to admit or deny the allegations in

paragraph 13 of the Complaint that MoonCell is in default under the Note, and therefore

denies the allegations.  Mr. Hood further states that any such default is irrelevant to him,

in that he had nor has any obligation to Alliance.

14.     Does not have sufficient information to admit or deny the allegations in

paragraph 14 of the Complaint that Alliance is entitled to the remedies set forth in section

7 of the Note, and therefore denies the allegations.  Mr. Hood further states that any such

remedies are irrelevant to him, in that he had nor has any obligation to Alliance.

15.     Does not have sufficient information to admit or deny the allegations in

paragraph 15 of the Complaint that Alliance put MoonCell on notice of default, and

demanded payment, and therefore denies the allegations.

16.     Denies the allegations in paragraph 16 of the Complaint that Alliance put Mr. Hood on notice of the defaults of MoonCell and his obligations to honor and pay the obligations of MoonCell under the terms of the Guaranty, as Mr. Hood denies any such obligations to Alliance.  Mr. Hood does not have sufficient information to admit or deny the same allegations in paragraph 16 as to Mr. Manes, and therefore denies the allegations.  Mr. Hood states, however, that he received the letter dated June 21, 2007, from Alliance, a copy of which is attached to the Complaint as "Exhibit E", and notes that Giovanni Capriglione ("Mr. Capriglione") is identified as a copy recipient of that letter.  The significance of Mr. Capriglione's role in this matter is set forth in more detail below.

17.     Denies the allegations in paragraph 17 of the Complaint that neither Mr. Hood nor Mr. Manes indicated a willingness to honor their obligations under the Guaranty, as Mr. Hood denies any such obligations.  Mr. Hood admits that he wrote the letter to counsel for Alliance dated June 29, 2007, and a part of "Exhibit G" to the Complaint, regarding Mr. Hood's previous resignations from MoonCell.  Mr. Hood notes that the June 29 letter is entirely consistent with his position herein that he had nor has no obligation to Alliance, as a personal guarantor, or otherwise.  Instead, Mr. Hood simply executed a signature page, under the heading "QUANTUM COMMUNICATIONS, INC.", and which signature page Mr. Hood understood and continues to understand was part of an agreement by Pacesetter to invest in MoonCell, and not part of any agreement with Alliance, of which there was none.  In addition, Mr. Hood states that he understood that his signature was solely as a principal of Quantum Communications, Inc., also known as Quantum Prime Communications, Inc., and formerly known as Quantum Prime

Communications, LLC ("Quantum"), and notes that he was first presented with the
signature page prior to execution of it by anyone else, and, as such, his pre-typed name
and signature blank appeared just below other such blanks under the heading
"QUANTUM COMMINCATIONS, INC."  Mr. Hood further notes that his pre-printed
name was not followed by the words "personally", "individually", or any other suffix,
and that on its face the signature page is not indicative of that of a personal or individual
guarantee.

18.     Denies the allegations in paragraph 18 of the Complaint that he is
personally obligated to honor the alleged obligations of MoonCell under the applicable
"loan documents" (as so referenced by Alliance in the Complaint), in that Mr. Hood
made no such agreement, or any other, with Alliance, or that he has an obligation to pay
the Loan Indebtedness in full and in its entirety, or an obligation to reimburse Alliance
for its attorneys' fees and expenses.  Even if Mr. Hood was a party to the purported
Guaranty (and he was not), under the very terms of that Guaranty, specifically in section
1 (as quoted above), he would have no liability, given his financial circumstances.  Mr.
Hood notes, for all purposes including his responses in this Answer, and in his
Counterclaim set forth below, that the Guaranty and other purported "loan documents"
were *not* drafted or in any way negotiated by Mr. Hood or by any counsel on behalf of
Mr. Hood, but, upon information and belief, were drafted and/or presented by Alliance
and/or its counsel, and, as such, all ambiguities and vagaries in the documents are strictly
construed *against* Alliance and in favor of Mr. Hood.[3]  Mr. Hood further notes that the
above-quoted liability limitation provisions in section 1 of the purported Guaranty were

___

[3] This would include the myriad contradictions regarding the entire relationship between
Pacesetter/Alliance, MoonCell, and others.

inserted clearly not for the benefit of any lender or investor, but, instead, for the benefit of the recipient of the investment funds, and must be interpreted accordingly.

19.     Denies, for the foregoing reasons, the allegations in paragraph 19 of the Complaint that he had an "absolute and unconditional obligation" under the Guaranty, that he had any obligation at all to Alliance, or that he owes Alliance $1,347,727.37, and/or any other sum, attorneys' fees, or costs.

20.     In response to the allegation in paragraph 20 of the Complaint that paragraphs 1 through 19 are incorporated by reference, Mr. Hood hereby incorporates by reference his respective responses set forth above to paragraphs 1 through 19.

21.     Denies, for the reasons previously set forth herein, the allegations in paragraph 21 of the Complaint that Mr. Hood is absolutely and unconditionally required to make payment when due and to timely perform all liabilities of MoonCell to Alliance.

22.     Denies, for the reasons previously set forth herein, the allegations in paragraph 22 of the Complaint that Alliance is entitled to enforce the Guaranty against Mr. Hood.

23.     Denies, for the reasons previously set forth herein, the allegations in paragraph 23 of the Complaint that the Guaranty represents valid and enforceable obligations of Mr. Hood.  He does not, however, have sufficient information to either admit or deny that Quantum and, as set forth in more detail in the below Counterclaim, Alliance itself, as Guarantors, have valid and enforceable obligations under the Guaranty.

24.     Admits the allegations in paragraph 24 of the Complaint that Alliance has made demand upon Mr. Hood and Mr. Manes for payment of the alleged obligations of

MoonCell ostensibly owing to Alliance pursuant to the Note and Loan Agreement, but again denies that Mr. Hood has any obligation to Alliance.

25.     Admits the allegations in paragraph 25 of the Complaint that Mr. Hood and Mr. Manes have refused to perform under the Guaranty, but denies that Mr. Hood had or has any duty to do so.  Mr. Hood does not have sufficient information to either admit or deny whether the Guarantors, including, as set forth in more detail in the below Counterclaim, Alliance, have honored or performed any obligations under the Guaranty.

26.     Denies, for the foregoing reasons, the allegations in paragraph 26 of the Complaint that Mr. Hood is in breach, material or otherwise, of any agreement with Alliance, or that he has caused any damages to Alliance.

27.      Denies, for the foregoing reasons, the allegations in paragraph 27 of the Complaint that Alliance is entitled to judgment against Mr. Hood, in the amount of $1,347,727.37, with a per diem of $670.17, plus fees and expenses, or any other sums.

28.     In response to the allegations in paragraph 28 of the Complaint that paragraphs 1 through 27 are incorporated by reference, Mr. Hood hereby incorporates by reference his respective responses set forth above to paragraphs 1 through 27.

29.     States that the requests in paragraph 29 of the Complaint do not call for an answer, but Mr. Hood denies, for the foregoing reasons, that Alliance is entitled to a money judgment in its favor against Mr. Hood for $1,347,727.37, or for any other amount, compensatory damages, costs and fees, and/or any other relief.

30.     Denies all allegations in the Complaint that are not expressly admitted, and demands strict proof of all such allegations.

## Other Affirmative Defenses

31.     In addition to the affirmative defenses set forth above, Mr. Hood hereby raises the following specific affirmative defenses, to which a written reply is expressly requested:

       a.      Statute of Frauds.

       b.      Statute of Limitations.

       c.      Laches.

       d.      Misrepresentation.

       e.      Unclean Hands.

       f.      Estoppel.

       g.      Inadequacy/Failure of Consideration.

       h.      Failure to Mitigate Damages.

       i.      Ultra Vires.

       j.      Lack of Privity.

## COUNTERCLAIM AND CROSS-CLAIM

Comes now Mr. Hood, by counsel, pursuant to Rule 13 of the *Federal Rules of Civil Procedure*, and for his Counterclaim against Alliance, and his Cross-Claim against Mr. Manes, states that:

1.      Mr. Hood is a resident and citizen of the Commonwealth of Virginia.

2.      Alliance, upon information and belief, is a Delaware corporation, who is represented by counsel in the underlying action herein.

3.      Mr. Manes, upon information and belief, is a resident and citizen of the Commonwealth of Virginia, who, upon information and belief, can be served with process at 12 Baldwin Drive, Falmouth, Virginia  22405.

4.      Jurisdiction and venue in this case are as set forth in the Complaint filed herein by Alliance, and in Mr. Hood's Answer thereto set forth above.

5.      Mr. Hood and Mr. Manes were principals in MoonCell, a Delaware Corporation, and in Quantum, a Virginia corporation.

6.      Pacesetter is, according to Mr. Capriglione, who has described himself as "an employee of Pacesetter Management Group, L.L.C.", a company with "management responsibility over Alliance…"  Mr. Capriglione has also described himself as "the Vice President for Pacesetter Management Group", "the management company for Alliance..." He has also stated that his responsibilities include oversight of certain companies in which Alliance has an "investment", and that MoonCell is one of those companies.

7.      As a principal of both MoonCell and Quantum, Mr. Hood understood and believed, including through representations made by Mr. Manes, and apparently confirmed by agents of Pacesetter and/or Alliance, including Mr. Capriglione, and others

identifying themselves as being with "Pacesetter Capital Group", that Pacesetter was an "investor" in MoonCell, and would thus be providing funds to MoonCell for "investment" purposes, and that only MoonCell and Quantum, but not Mr. Hood personally or individually, would bear any liability for such investment.  The clear, consistent, and reasonable implication to Mr. Hood of these representations was that any infusion or injection of funds into MoonCell by Pacesetter was simply an investment, with the risks inherently associated therewith, and in no way some "loan" that he would personally guarantee.

8.      To that apparent end, Mr. Hood was presented with a blank (that is, unsigned by anyone) signature page, *sans* page numbers or any other notations, in the following form (the "Hood Signature Page"):

-------------------------------------------------------------------------------------------------------

[top of Hood Signature Page]

**EXECUTED as of the __ day of November, 2003.**

**GUARANTORS:**

**QUANTUM COMMUNCIATIONS, INC.**

By:_____
Name:_____
Title:_____


_____
**Robert J. Manes**


_____
**Richard L. Hood**


**ALLIANCE ENTERPRISE CORPORATION**

By:_____
Name:_____
Title:_____


[remainder of Hood Signature Page was empty]

-------------------------------------------------------------------------------------------------------

A copy of the subsequently fully-executed Hood Signature Page, along with apparent

facsimile delivery information (date, time, facsimile document number, and facsimile

page number), from, upon information and belief, Mr. Manes, is attached to the

Complaint as a part of "Exhibit D" to the Complaint.

    9.      The only reference to Alliance on the face of the Hood Signature Page, is

as to Alliance as a Guarantor, as the document itself clearly identifies both Quantum and

Alliance under the heading of "**GUARANTORS**".

    10.     Mr. Hood notes that the remaining signature pages of the purported "loan

documents" (as defined by Alliance in the Complaint, and attached thereto as Exhibits),

also clearly set forth the respective capacities of the intended signatories thereof, *viz*, the signature page of:

a.      Exhibit A to the Complaint (the "Loan and Security Agreement") lists "MoonCell, Inc." under the heading of "<u>DEBTOR</u>" [capitals and/or underscores in originals] and "Alliance Enterprise Corporation" under the heading of "<u>SECURED PARTY</u>";

b.      Exhibit B to the Complaint (the "Secured Promissory Note") lists "MoonCell, Inc." under the heading of "MAKER", and lists no other parties nor has any other headings; and,

c.      Exhibit C to the Complaint (the "Amendment of Secured Promissory Note") lists "MoonCell, Inc." under the heading of "<u>Maker</u>" and "Alliance Enterprise Corporation" under the heading of "<u>Payee</u>".

11.      While Mr. Hood neither admits nor denies that MoonCell was in fact a debtor or maker, or that Alliance was a secured party or payee, such intent of the drafter of the above signature pages is clear, just as the clear intent of the Hood Signature Page is for Alliance to be a Guarantor.

12.      Mr. Hood does not recall the page or pages that preceded the Hood Signature Page, and does not recall any of the so-called "loan documents", but did not believe that Alliance was involved in any way other than as a Co-Guarantor with Quantum.  Mr. Hood notes, as set forth in his above Answer to the Complaint, that pages one (1) through seven (7) of the purported Guaranty attached to the Complaint as Exhibit D state in the lower left hand corner of each page "GUARANTY—Page 1" through

"GUARANTY—Page 7", respectively, but that the Hood Signature Page had and has no such reference.

13.     Mr. Hood further notes that there are no initials on any page of the Guaranty or any of the other so-called "loan documents" which indicate that he ever received, reviewed, or consented to any document other than the solitary Hood Signature Page.  Mr. Hood notes that such initialing is a common and best practice, which serves to obviate situations such as those present in the case at bar.[4]

14.     Mr. Hood believed, and continues to believe, based upon the representations to him set forth above, and the documentation as presented to him, that MoonCell was to be the recipient of investment funds from Pacesetter, to be guaranteed by Quantum and by Alliance.

15.     Thus, in the event that the Hood Signature Page somehow imposes liability upon Mr. Hood, he hereby seeks indemnification and contribution for same from Alliance and Mr. Manes, jointly and severally, in the amount of $1,347,727.37, with a per diem of $670.17, plus an award of his costs, attorneys' fees, compensatory and other damages as may be hereafter pleaded, and pre- and post-judgment interest thereon.

### Reservation of Rights

Mr. Hood hereby reserves the right to amend or enlarge his Answer, including as to affirmative defenses, Counterclaim, and Cross-Claim, to join additional parties, claims, and demands for relief, including, but not limited to, additional monetary damages and

---

[4] Along those lines, Mr. Hood further notes that effective July 1, 2007, the Code of Virginia (§ 47.1-15. Prohibitions) was amended to prohibit "stand-alone" notarized signature pages.  While the signature pages at issue here do not appear to require notarization, the public policy principle is the same—*viz*, safeguards must be taken to ensure the integrity of documents that are to be binding between and among parties.  In the

attorneys' fees, and, in the event that Mr. Hood is deemed to have a personal (as Alliance

appears to allege) and non-commercial or other obligation which implicates the Fair Debt

Collection Practices Act, an action pursuant to 15 U.S.C. § 1692, *et seq.*

### **Prayer for Relief**

WHEREFORE, and by reason of the foregoing, Mr. Hood prays that this

Honorable Court enter a final order dismissing with prejudice Alliance's Complaint

against him, granting judgment in his favor against Alliance on the Counterclaim,

including attorneys' fees and costs, granting judgment in his favor against Mr. Manes on

the Cross-Claim, including attorneys' fees and costs, and granting such further relief as

deemed necessary.

Trial by jury is demanded.

Respectfully submitted,

**RICHARD L. HOOD**

By:    /s/  Lisa Taylor Hudson
                 Counsel

L. Lee Byrd, Esquire [VSB # 28662]
Stefan M. Calos, Esquire [VSB # 27405]
Lisa Taylor Hudson, Esquire [VSB # 45484]
Sands Anderson Marks & Miller, P.C.
801 East Main Street
1800 WyteStone Plaza
P.O. Box 1998
Richmond, Virginia 23218-1998
Telephone: (804) 648-1636
Facsimile: (804) 783-7291
lbyrd@sandsanderson.com
scalos@sandsanderson.com
lhudson@sandsanderson.com
     *Counsel for Defendant Richard L. Hood*

---

case at bar, the documentation presented to Mr. Hood fails on every count, and simply cannot be relied
upon to impose any obligation upon him to Alliance, or otherwise.

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was delivered by U.S. Mail, first class postage prepaid and sent by electronic transmission through the Electronic Case Filing ("ECF") system as applicable, on this 22nd day of August, 2007, to:

Robert S. Westermann, Esquire  **(By U.S. Mail and ECF)**
Hunton & Williams LLP
951 East Byrd Street
Riverfront Plaza, East Tower
Richmond, Virginia 23219
rwestermann@hunton.com

Robert J. Manes  **(By U.S. Mail)**
12 Baldwin Drive
Falmouth, Virginia  22405


_____/s/  Lisa Taylor Hudson_____